UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 0:26-cv-03161-DJF

SAMMY P.,

Plaintiff,

v.

**DEFENDANT'S SSA BRIEF**

FRANK BISIGNANO,
Commissioner of Social Security,

Defendant.

## Issues

I. Whether Substantial Evidence Supports the Administrative Law Judge's (ALJ's) Application of the Age Categories– DISPUTED.

II. Whether Substantial Evidence Supports the Evaluation of the Medical Opinions – DISPUTED.

III. Whether the Residual Functional Capacity (RFC) Accounts for Plaintiff's Moderate Limitation in Concentrating, Persistence, or Maintaining Pace – DISPUTED.

IV. Whether the ALJ was Obligated to Further Develop the Record – DISPUTED.

V. Whether the ALJ Appropriately Considered the Third-Party Statements – DISPUTED.

## Facts

## Standard of Review

The Act defines disability as the inability to do substantial gainful activity due to a medically determinable impairment lasting for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A). The Act authorizes this Court to review the Commissioner's final decision to determine whether substantial evidence supports it. 42 U.S.C. § 405(g); *Anderson v.*

*Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). The Supreme Court addressed the substantial evidence standard in *Biestek v. Berryhill*, 587 U.S. 97, 102-03 139 S. Ct. 1148, 1154 (2019), stating:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. . . . And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Id.* (emphasis added) (citations omitted). If substantial evidence supports the ALJ's decision, the Court should not reverse merely because the Court would have decided differently. *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010). The Eighth Circuit has held that a court should "defer heavily to the findings and conclusions of the Social Security Administration." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010).

## ARGUMENT

### I. Substantial Evidence Supports the ALJ's Election to Not Apply the Age Categories Non-Mechanically.

If a claimant is within a few days to a few months of reaching a higher age category and using their chronological age results in a denial, then, after evaluating all factors (i.e., residual functional capacity (RFC), age, education, and work experience) in the claim, the ALJ will consider using the higher age category if it results in a favorable determination. 20 C.F.R. § 404.1563(b). Here, Plaintiff was 54 years old at the time of the ALJ's decision, putting him into a category with individuals between 50 and 54 who are "closely approaching advanced age" under 20 C.F.R. § 404.1563 (*see* Tr. 187). Plaintiff was within

six months of reaching a higher category for persons of "advanced age" who are 55 and older, which would have resulted in a finding of disability; therefore, a borderline age situation existed. 20 C.F.R. § 404.1563(b). Despite his borderline age, the ALJ found the use of a higher age category unwarranted:

> However, in order to apply the age categories non-mechanically, the undersigned is required to consider specific factors to determine whether the use of the higher age category is supported. In this case, the undersigned finds that the use of the higher age category is not supported by the limited adverse impact of all factors on the claimant's ability to adjust to other work.
>
> The undersigned does not find that the claimant's age is a factor such that this borderline age situation exists; education is considered in the medical-vocational rule already and a high school diploma (not GED) is accounted for in the medical-vocational rules; work experience was skilled/semi-skilled in the claimant's composite job; and while the claimant's residual functional capacity is for unskilled work, this is not to be double weighed—this is already addressed in the grid rules of "no transferable skills" and "no direct entry", the other residual functional capacity limitations have been considered (as they do not erode the occupational base so as to already have been weighed); as a result, they do not warrant using the higher age category. Considering all factors, the undersigned finds that the higher age category should not be applied nonmechanically.

(Tr. 26).

The determination of whether to apply a higher age category is within the discretion of the Commissioner. *See* 20 C.F.R. § 404.1563(b). The Eighth Circuit applies a highly deferential standard to the agency concerning the analysis of borderline age situations. As stated in *Phillips v. Astrue*, 671 F.3d 699 (8th Cir. 2012), "a mere statement by the Commissioner that he considered the borderline situation would likely suffice" to show

that the Commissioner considered applying a higher age rule. *Id.* at 706 (citing *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 527 (6th Cir. 2006)).

The ALJ's election to not apply the age categories non-mechanically is consistent with the guidance promulgated by the agency in POMS DI 25015.006(E). That section clarifies, in relevant part, (1) the agency does "not reconsider issues such as special education, home schooling, and possession of a General Educational Development (GED) certificate as support for use of the higher age category in a borderline age situation"; (2) we considered if the past relevant work category for both applicable rules is "unskilled or none" or if the work was in an isolated industry, such as salmon fishing; and (3) we do not double-weigh factors already accounted for in the RFC. POMS DI 25015.006(E)(1)(b)-(d), Borderline Age, available at https://secure.ssa.gov/poms.nsf/lnx/0425015006 (last visited Oct. 22, 2026).

In attempting to assign error, Plaintiff contends that the ALJ should have applied the age categories non-mechanically and, therefore, applied the higher age category (ECF No. 10, pp. 3-5). In support, he cites only factors that POMS DI 25015.006(E) identifies as *not* being appropriate for the application of the higher age categories, such as the functional limitations resulting from his impairments (i.e., his RFC).

Plaintiff also raises as stylistic challenge: in the two paragraphs quoted above, the ALJ stated both that a borderline age situation both exists and does not exist (Tr. 26). While inartful, the ALJ's ultimate findings – that a borderline situation exists but that non-mechanical application of the higher age category is not warranted by the acts in this case

– was within the ALJ's reasonable zone of choice and enjoys substantial evidentiary support.

## II. Substantial Evidence Supports the Evaluation of the Medical Opinions.

Because Plaintiff's claim was filed after March 27, 2017, the Social Security Administration's new regulations ("Revised Regulations") for evaluation of medical opinions and prior administrative medical findings apply to this claim. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions to Rules), 2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. Under the Revised Regulations, the Commissioner will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings, including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, the Commissioner shall "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings using the factors set forth in the regulations: (1) supportability; (2) consistency; (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors, including but not limited to evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the agency's disability program's policies and evidentiary requirements. 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5). However, supportability and consistency are the most important factors. 20 C.F.R. § 404.1520c(b)(2).

At the initial determination level, State agency medical consultant Gregory Salmi, M.D., found that Plaintiff could perform light work except that he could never climb ladders, ropes, or scaffolds; could occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; could frequently balance; could occasionally communicate with the general public with additional time alotted, as needed to effectively convey his message; would not be able to engage in excessive/prolonged verbal communication with the general public as needed in customer service, sales, public speaking, etc.; and needed to avoid hazards, including unprotected heights and operation of heavy commercial vehicles (Tr. 68-79). His findings were affirmed upon reconsideration by Andrea Paulson, M.D. (Tr. 81-91). The ALJ found that the prior administrative medical findings of Dr. Salmi and Dr. Paulson were overall persuasive (Tr. 22).

At the initial determination level, State agency psychological consultant Kathleen Feil, Ph.D., found that Plaintiff was able to carry out routine, repetitive tasks with adequate persistence and pace; could have brief and superficial contact with the co-workers and the general public; should not have any direct work responsibilities with the general public; and could tolerate and respond to appropriately to ordinary supervision to handle ordinary levels of supervision found in a customary work setting; and could tolerate and respond to stress adequately to handle the stresses of a routine, repetitive work setting (Tr. 68-79). Joy Piccolino, Psy.D., affirmed those findings upon reconsideration (Tr. 81-91). The ALJ found the prior administrative medical findings of Dr. Feil and Dr. Piccolino persuasive "only insofar as they indicate that there are indeed limitations in the areas of:

understanding, remembering, and applying information; interacting with others; concentrating, persisting, and maintaining pace; and adapting and managing oneself" (Tr. 23).

In March 2024, Plaintiff's speech-language therapist, Kari Bottemiller M.S., APRN, opined Plaintiff "[c]annot drive CDL; cannot maintain/perform effective communication with staff/co-workers/customers; risk for injury due to cognitive status" (Tr. 343). APRN Bottenmiller dismissed Plaintiff from speech therapy (Tr. 1301). She noted that Plaintiff was "doing well without any concerns form a symptom standpoint, his wife endorses it" (Tr. 1302). "From my perspective, I have no concerns with his ability to return to work safely" (Id.). The ALJ noted APRN Bottenmiller's July 2024 statements, but not the March 2024 one (Tr. 17).

In September 2024, consultative examiner Tatyana Karpyak, Psy.D., opined that Plaintiff would be able to manage his own funds if they were given to him (Tr. 1362). "The claimant demonstrates a very variable ability to understand, remember, and follow instructions. The tests' results reveal impaired cognitive functioning, impaired auditory memory and borderline impaired visual memory. It is difficult to make a decision regarding the claimant's ability to perform work-related duties with adequate persistence and pace due to suspected exaggeration of his memory problems. His ability to tolerate work-related stresses may be limited. The claimant's behavior during the interview and his communication with this examiner indicate that he is able to respond adequately to

superficial contact with others, although his mild speech difficulties frustrate him" (Id.). The ALJ found Dr. Karpyak's opinion unpersuasive (Tr. 20).

Plaintiff argues that the ALJ erred in the evaluation of the March 2024 opinion of APRN Bottenmiller (ECF No. 10, pp. 5-8). Admittedly, the ALJ did not expressly evaluate the March 2024 opinion of APRN Bottenmiller separately from her other statements; however, he addressed the July 2024 opinion releasing Plaintiff to return to work safely with no specific work-related limitations (Tr. 17). At most, Plaintiff's omission of discussion of the March 2024 opinion is harmless because, even if persuasive, when read with APRN Bottenmiller's July 2024 opinion, it would not establish a finding that Plaintiff had any limitations that satisfy the duration requirement. *See* 20 C.F.R. § 404.1509; SSR 23-1p, Duration Requirement for Disability, 2023 WL 8236247, at *2 (S.S.A. Nov. 7, 2023). Dr. Bottenmiller released Plaintiff to safely return to work within 12 months of both the October 2023 alleged onset date of disability and her issuance of the March 2024 opinion.

Without citation to authority, Plaintiff argues that the ALJ erred by considering the underlying report of Dr. Karpyak and relying upon it in the symptom analysis but also finding the opinion itself unpersuasive (ECF No. 10, pp. 8-10). But the ALJ is obligated to consider *all* credible evidence when determining a claimant's RFC. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011) ("A claimant's RFC represents the most he can do despite the combined effects of all of his] credible limitations and must be based on all credible evidence."); see also Schmitt v. Kijakazi, 27 F.4th 1353, 1360 (8th Cir. 2022). The ALJ

then must appropriately evaluate the persuasiveness of the opinions. 20 C.F.R. §§ 404.1513(a)(2), 404.1520c. That is precisely what the ALJ did (Tr. 16-20).

Plaintiff argues that the ALJ erred in evaluating Dr. Karpyak's opinion because he did not specifically cite the intelligence testing administered by Dr. Karpyak in the specific paragraph describing how persuasive the ALJ found the opinion to be (ECF No. 10, pp. 9-10). But, as the Eighth Circuit has explained, "a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case . . . An ALJ's reasoning need only be "clear enough to allow for appropriate judicial review." *Grindley v. Kijakazi*, 9 F.4th 622, 631 (8th Cir. 2021) (quoting *Sloan v. Saul*, 933 F.3d 951, 951 (8th Cir. 2019)). "The ALJ's brevity is not reversible error." *Id.* Here, the ALJ considered the I.Q. score as part of the overall consideration of the record evidence (*see* Tr. 19) and, even if he did not, "[a]n ALJ is not required to discuss every piece of evidence submitted." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)); see also England v. Astrue, 490 F.3d 1017, 1022 (8th Cir. 2007) ("'[A]n ALJ's failure to cite specific evidence does not indicate that it was not considered.'" (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000))); *Craig*, 212 F.3d at 436 ("[A]n ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." (citation omitted)). And the ALJ's observations about the validity of the I.Q. testing was that was but one, valid reason relied upon by the ALJ.

The ALJ also expressly noted that the opinion was inconsistent with the record evidence overall, including his activities of daily living (Tr. 20).

Plaintiff further argues that, because the ALJ did not adopt a specific medical opinion to support the RFC, the ALJ was obligated to further develop the record (ECF No. 10, p. 10). But the Eighth Circuit has rejected the idea that an ALJ's conclusion about an RFC limitation must be supported by "functional [i.e. some] medical evidence," defined "as a 'medical professional's opinion ... regarding [the claimant's] ability to function in the workplace.'" *Bonham v. Bisignano*, 177 F.4th 934, 941 (8th Cir. 2026). "[A]n RFC must be based on some reliable medical evidence about the claimant's ability to function in the workplace, not that the evidence must be functional in-and-of-itself." *Id.* at 942. Here, the record includes such evidence -- including the medical evidence documenting objective medical signs and laboratory findings, Plaintiff's course of treatment, his statements to treatment providers, and his activities of daily living, as well as the partially persuasive prior administrative medical findings of Dr. Feil and Dr. Piccolino. That evidence provides more than sufficient basis for the ALJ to have crafted the RFC finding.

Finally, Plaintiff contends that the record supports some greater limitations than were ultimately adopted into the RFC (ECF No. 10, p. 11, 12-13). This is a plain invitation to the Court to reweigh the evidence in Plaintiff's favor, which is cannot do. The Court "do[es] not reweigh the evidence or review the factual record de novo." *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994). If, after reviewing the evidence, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the

[ALJ's] findings, [the court] must affirm the decision." *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992); *see also Lawrence v. Saul*, 970 F.3d 989, 996 (8th Cir. 2020) ("Although the present record certainly could have supported a different outcome, '[i]f substantial evidence supports the Commissioner's decision, we may not reverse even if we might have decided the case differently.'" (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)); *Ross v. O'Malley*, 92 F.4th 775, 779 (8th Cir. 2024) ("Although the evidence may support a finding that Ross's back [and head/neck] injuries preclude him from working in the national economy, the evidence also supports the ALJ's contrary finding. Because the evidence supports two inconsistent conclusions, and both conclusions are in the zone of choice, we cannot reverse the ALJ's determination.").

## III. The RFC Accounts for Plaintiff's Moderate Limitation in Concentrating, Persistence, or Maintaining Pace.

Section 12.00 of the Listings of Impairments recognizes 11 types of mental disorders that can constitute a disability for purposes of Social Security benefits. 20 C.F.R. pt. 404, subpt. P, app. 1(12.00)(A)(1). Listings 12.04, 12.06, and 12.15 each have three subparagraphs: A, B, and C. Id. at (A)(2). Listing 12.08 has two subparagraphs, designated A and B. Id. Paragraph B lists areas of mental functioning used in a work setting in order to assess the claimant's functioning. 20 C.F.R. pt. 404, subpt. P, app'x. 1(12.00)(A)(2)(b), (E). The four areas of functioning are: 1) understand, remember, or apply information; 2) interact with others; 3) concentrate, persist, or maintain pace; and 4) adapt or manage oneself. Id. at (E)(1)-(4) . The Listings use a five-point rating system to define a claimant's

functioning in these four areas: no limitation; mild limitation; moderate limitation; marked limitation; and extreme limitation. *Id.* at (F)(2)(a)-(e). To satisfy Paragraph B, the claimant's mental disorder must result in either an extreme limitation in one of the four areas or a marked limitation in two of the four. *Id.* at (F)(2). In relevant part, the ALJ found that Plaintiff had moderate limitations in concentrating, persisting, or maintaining pace (Tr. 14-15) prior to evaluating Plaintiff's RFC (Tr. 15-24). The ALJ found that Plaintiff had the mental RFC to understand, remember, and carry out simple instructions; frequently interact with supervisors, occasionally interact with co-workers, and never interact with the public; and deal with occasional changes in a routine work setting (Tr. 15).

Plaintiff argues that the RFC fails to account for his moderate limitation in concentrating, persistence, or maintaining pace (ECF No. 10, pp. 11-12). His argument is unavailing.

"While the RFC findings did not specify work-related limitations based on some moderate functional-area limitations that the ALJ found under the 'paragraph B' criteria, the two findings serve distinct purposes at the separate steps of the sequential evaluation process." *West-Viotay v. Saul*, 829 Fed. App'x 149, 150 (8th Cir. 2020) (per curiam) (unpublished); *see also Chismarich*, 888 F.3d at 980 ("[T]he different steps serve distinct purposes, the degrees of precision required at each step differ, and our deferential standard of review precludes us from labeling findings as inconsistent if they can be harmonized"); *Hammer v. O'Malley*, No. 2:23-CV-28 HEA, 2024 WL 4345755, at *5 (E.D. Mo. Sept. 30, 2024) ("In its own research, the Court has found no case where the Eighth Circuit Court of

Appeals reversed because the ALJ failed to explain explicitly why he or she did not include in the RFC mild mental limitations that were found in step two" because "the different steps serve distinct purposes, the degrees of precision required at each step differ, and our deferential standard of review precludes us from labeling findings as inconsistent if they can be harmonized") (quotation omitted); *Hosch v. Colvin*, No. C15-2014-CJW, 2016 WL 1261229, at *5 (N.D. Iowa Mar. 30, 2016) ("The ALJ was not required to include specific, moderate limitations on concentration, persistence, or pace in his RFC assessment or hypothetical question to the Vocational Expert (VE), simply because he found plaintiff had these limitations in his "paragraph B" criteria analysis at Step Three"); *Crane v. Colvin*, No. 4:13-046-DGK-SSA, 2014 WL 460858, at *4 (W.D. Mo. Feb. 5, 2014) (providing that the purpose of the special technique at steps two and three "is to evaluate the severity of the claimant's mental impairments to determine whether they meet or equal a listing, not to determine Plaintiff's RFC."). Indeed, SSR 96-8P provides in pertinent part that:

> The psychiatric review technique described in 20 CFR 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

1996 WL 374184, at *4 (Soc. Sec. Admin. July 2, 1996).

Moreover, the RFC accounts for Plaintiff's limitations by finding that Plaintiff was limited to simple instructions (Tr. 15). *See Chismarich*, 888 F.3d at 980-981 (8th Cir. 2018) (moderate difficulties in concentration, persistence, or pace are consistent with an RFC that finds a claimant capable of understanding, remembering, and carrying out simple instructions while performing non-detailed tasks). The balance of Plaintiff's third, enumerated argument is another invitation to the Court to reweigh the evidence in Plaintiff's favor, which is cannot do. *Naber*, 22 F.3d at 188; *see also Robinson*, 956 F.2d at 838; *Lawrence*, 970 F.3d at 996; *Ross*, 92 F.4th at 779.

**IV. The ALJ was Not Obligated to Further Develop the Record.**

"There is no bright line test for determining when the Secretary has failed to develop the record," but "the determination in each case must be made on a case by case basis." *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994) (quoting *Lashley v. Secretary of Health & Human Services*, 708 F.2d 1048, 1052 (6th Cir. 1983)). It is well-settled "that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004) (citing cases); *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007). However, the ALJ is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record. *Whitman v. Colvin*, 762 F.3d 701, 707 (8th Cir. 2014) (quoting *Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994)). And the burden of proof is on the claimant to establish his limitations. *See Steed v. Astrue*, 524 F.3d 872, 874 n. 3 (8th Cir. 2008)

("Through step four of [disability] analysis, the claimant has the burden of showing that she is disabled."); *see Gowell v. Apfel*, 242 F.3d 793, 799 (8th Cir. 2001).

"The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Halverson v. Astrue*, 600 F.3d 922, 933 (8th Cir. 2010). "Although that duty may include re-contacting a treating physician for clarification of an opinion, that duty arises only if a crucial issue is undeveloped." *Id.* An undeveloped statement may include "the report from a medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." *Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir. 2021) (internal quotations omitted). If the record does not contain all the information needed to determine whether a claimant is disabled, an ALJ may take various steps, such as ordering additional exams or requesting additional evidence, to make the decision. 20 C.F.R. § 404.1520b(b)(2). However, "an ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." Naber v. Shalala, 22 F.3d 186, 189 (8th Cir. 1994). Ultimately, the question is whether the claimant "was prejudiced or treated unfairly by how the ALJ did or did not develop the record; absent unfairness or prejudice, we will not remand." *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993).

Here, Plaintiff contends that the ALJ was obligated to further develop the record because there is no persuasive medical opinion or prior administrative medical finding to support the RFC (ECF No. 10, pp. 12-13). Again, however, the Eighth Circuit has rejected the idea that an ALJ's conclusion about an RFC limitation must be supported by "functional [i.e. some] medical evidence," defined "as a 'medical professional's opinion ... regarding [the claimant's] ability to function in the workplace.'" *Bonham v. Bisignano*, 177 F.4th 934, 941 (8th Cir. 2026). "[A]n RFC must be based on some reliable medical evidence about the claimant's ability to function in the workplace, not that the evidence must be functional in-and-of-itself." *Id.* at 942. Here, the record includes such evidence – including the medical evidence documenting objective medical signs and laboratory findings, Plaintiff's course of treatment, his statements to treatment providers, and his activities of daily living, as well as the partially persuasive prior administrative medical findings of Dr. Feil and Dr. Piccolino. That evidence provides more than sufficient basis for the ALJ to have crafted the RFC finding. There are no prejudicial evidentiary gaps that the ALJ was obligated to fill by further developing the record.

## V. The ALJ Appropriately Considered the Third-Party Statements.

An ALJ is "not required to articulate how [he] considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d). Here, the record also includes third party statements from Plaintiff's wife (Tr. 309), a neighbor (Tr. 310), his son-in-law (Tr. 311), his father-in-law (Tr. 312). The ALJ appropriately addressed the statements as follows:

> The undersigned did not provide articulation about evidence that is inherently neither valuable, nor persuasive, in accordance with 20 CFR 404.1520b. Additionally, although evidence from other sources that are not considered "acceptable medical sources" cannot be used to establish medically determinable impairments, it can be used to establish the severity of a claimant's impairments and how such impairments affect a claimant's ability to work (See 20 CFR 404.1513). The third party statements completed by the claimant's wife, neighbor, son in law and father in law are not medical opinions entitled to a persuasiveness articulation. (Ex. 26E, 27E, 28E, 29E). Nevertheless, although these opinions are not from acceptable sources, their statements have been considered along with the record as a whole, but greater reliance was placed on medical evidence. These opinions do not support a finding of disability in the absence of supporting objective evidence establishing greater functional limitations. Notably, these statements indicated the claimant has difficulty with remembering and understanding; he rarely leaves the house by himself; he is easily frustrated; his shoulder limits what he can do with his left arm; he cannot lift very much; he is easily confused; he does not have the same level of mobility he had before; his level of depression is very high; he is moody and they do not believe he would be able to work a full-time job.

The ALJ plainly considered the third party statements but did not articulate how persuasive they were, consistent with the requirements of 20 C.F.R. § 404.1520c(d). Without citation to authority, Plaintiff suggests the ALJ was not free to credit some of the third-party statements in part (ECF No. 10, pp. 13-14). But it is precisely the role of the ALJ consider and weigh all record evidence and determine an RFC based upon all credible evidence. *See McCoy*, 648 F.3d at 614; *see also Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022) (stating an "ALJ is free to accept some, but not all, of a medical opinion"). Finally, to the extent Plaintiff contends the ALJ should have relied upon the statements to some greater or lesser degree (a proposition for which he cites no authority), his argument

is yet another invitation to this Court to reweigh the evidence in his favor, which is cannot do. *Naber*, 22 F.3d at 188; *see also Robinson*, 956 F.2d at 838; *Lawrence*, 970 F.3d at 996; *Ross*, 92 F.4th at 779.

## CONCLUSION

The ALJ's decision is legally sound and supported by substantial evidence. The Commissioner respectfully requests that this Court affirm the Commissioner's decision.[1]

Dated: October 22, 2026

DANIEL N. ROSEN
United States Attorney

LISA A. THOMAS
Executive Counsel for Program Litigation 4

*s/ Dennis A. Golden*
BY: DENNIS A. GOLDEN
Special Assistant U.S. Attorney
State Attorney ID #23920 - KS
Program Litigation 4
Social Security Administration
Law & Policy
Attn: Program Litigation 4
6401 Security Boulevard
Baltimore MD 21235-6401
(Duty Station: Jefferson City, MO)
Telephone: (816) 936-4904
Email: dennis.golden@ssa.gov

[1] Defendant maintains that the ALJ decision is free from harmful legal error and enjoys substantial evidentiary support. However, if the court finds otherwise, Defendant submits that the appropriate remedy is to remand this case back to the agency for further administrative proceedings under 42 U.S.C. § 405(g). There is not overwhelming evidence of disability for the reasons explained herein. *See Papesh v. Colvin*, 786 F.3d 1126, 1135 (8th Cir. 2015).

Attorneys for the Defendant